IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY J. GRAY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 13-134 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

O P I N I O N

**I. Background**

On October 22, 2009, Plaintiff Tammy Jo Gray filed her application claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383f. (R. 18, 74, 135, 162). Specifically, Plaintiff claimed that she became disabled on October 1, 2008, due to asthma, headaches, blurred vision, blackouts, back problems, depression, rheumatoid arthritis and diabetes. (R. 75, 162, 302).

After being denied initially on March 4, 2010, Plaintiff filed a "Request for Hearing by Administrative Law Judge ("ALJ") on April 20, 2010. (R. 18, 80-86). An administrative hearing was held on June 22, 2011, and Plaintiff was present and represented by an attorney. (R. 18, 33-52). In a decision dated July 11, 2011, the ALJ denied Plaintiff's request for benefits. (R. 18-26). The Appeals Council declined to review the ALJ's decision on October 22, 2012. (R. 7-9). On January 29, 2013, Plaintiff filed a timely[1] appeal with this Court, and the parties have filed cross-motions for summary judgment.

---

[1] The Court notes that Plaintiff received from the Appeals Council a 30-day extension of time to commence her civil action. (R. 1-2).

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id. at 317.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920(a). In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. §§ 416.920(e) & (f). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

3

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920 (g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. Plummer, 186 F.3d at 428.

### III.     The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 22, 2009, the date she filed her application. (R. 20). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had severe impairments, specifically, chronic obstructive pulmonary disease ("COPD"), rheumatoid arthritis, diabetes mellitus, fibromyalgia and obesity. (Id.). The ALJ found that Plaintiff's depression was a "non-severe" impairment and further concluded that her impairments did not meet any of the listings that would satisfy Step Three. (Id.).

The ALJ proceeded to Step Four where he found that Plaintiff retained the RFC to perform light work with a sit/stand option. (R. 20-25). Based on this RFC, Plaintiff established that she was incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 25).

The ALJ used a vocational expert ("VE") at Step Five to determine whether there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs – including ticket seller, car ticket checker,

4

and storage facility rental clerk – that exist in significant numbers in the national economy. (R. 25-26, 50-51). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 26).

**IV.     Legal Analysis**

Plaintiff raises several arguments as to why the ALJ erred in finding that she was not disabled. She contends that the ALJ committed error by: (1) concluding that her depression was a non-severe impairment; (2) failing to properly evaluate the medical opinion evidence; (3) finding that she retained the functional capacity to perform light work with a sit/stand option; and (4) posing a hypothetical to the VE that failed to include all of her limitations. See Plaintiff's Brief (Doc. No. 12). Defendant argues that the record evidence as a whole provides substantial support for the ALJ's ultimate determination that Plaintiff was not disabled.

After careful review, the Court agrees that remand is required in this case. Specifically, the Court finds that substantial evidence does not support the ALJ's Step Two finding or his RFC determination. These errors, in turn, led to a flawed hypothetical being posed to the VE. Consequently, the Court cannot find that the VE's testimony constitutes substantial evidence that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. See Yensick v. Barnhart, 245 Fed. Appx. 176, 180-81 (3d Cir. 2007). Contrary to Defendant's assertion, these errors are not harmless because they could have significantly impacted the occupational base for light work and thus the outcome of the case. Accordingly, the Court will remand the case for further consideration consistent with this Opinion.

  A.     ALJ's Step Two Determination

In finding that Plaintiff's depression was a "non-severe" impairment, the ALJ stated only the following:

> The claimant has been diagnosed with depression; however, there is no indication in the medical records that this impairment has imposed any significant

5

limitations on the claimant's ability to engage in basic work related activities. Thus, depression is considered a "non-severe" impairment.

(R. 20). Notably absent from the ALJ's Step Two finding is the evidence he relied upon in arriving at his conclusion. Indeed, the ALJ did not cite to any exhibits, nor did he give any indication of what specific "medical records" formed the basis for his finding that Plaintiff's depression did not impose any significant limitations on her ability to work. Despite the numerous mental health records in the file, the ALJ did not cite to a single treatment note and he failed to offer any rationale in support of his conclusion. The Court notes that the ALJ does not actually address the mental health evidence at any point in his decision; the ALJ confined his entire discussion of this evidence to two sentences which do nothing but generally acknowledge that it existed in the record. This was not a harmless error.

The ALJ's "explanation" in support of his Step Two finding is woefully inadequate because it constitutes nothing more than a bare-boned assertion. The ALJ appears to have summarily dismissed the mental health evidence, which is particularly problematic given that there was evidence of a low GAF score of 48[2] as well as two opinions from state agency psychologists who both identified moderate limitations in Plaintiff's social functioning.[3] (R.

---

[2] "A GAF score of 41 to 50 indicates that in the opinion of the evaluator the patient has: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009) (citing Diagnostic and Statistical Manual of Mental Disorders) (emphasis in original).

[3] Indeed, on December 3, 2008, Dr. Newman, a consultative state agency psychologist, examined Plaintiff and found that she had moderate limitations in her ability to: (i) interact appropriately with supervisors and coworkers and (ii) respond appropriately to work pressures in a usual work setting. (R. 298). On December 9, 2008, Dr. Brace, a non-examining state agency psychologist, also found moderate limitations in Plaintiff's ability to: (i) accept instructions and respond appropriately to criticism from supervisors and (ii) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 301). While the Court recognizes that Dr. Brace's findings were under the "Part I- Summary Conclusions" portion of his assessment, as

298, 301, 742). This evidence obviously was relevant to the ALJ's Step Two determination and it directly conflicted with his finding that Plaintiff's depression did not significantly limit her ability to work. The ALJ's failure to provide anything more than a conclusory statement precludes meaningful judicial review as the Court cannot determine whether the ALJ considered but rejected this relevant and conflicting evidence, or whether he ignored it altogether. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000) (finding that ALJ's step three finding was "hopelessly inadequate" because it "merely stated a summary conclusion," thereby precluding "meaningful judicial review."); id. at 121 (the ALJ "must give some indication of the evidence which he rejects and his reasons(s) for discounting such evidence.").

Moreover, if the ALJ did reject the evidence outright, there is no way for the Court to ascertain whether his rejection of the evidence was based on legitimate reasons since he failed to provide any justification at all. See Cotter v. Harris, 642 F.2d 700, 706-07 (noting that "the ALJ cannot reject evidence for no reason or the wrong reason" and that "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."). Thus, even if the ALJ was technically correct in his conclusion that Plaintiff's depression was a non-severe impairment, remand is required in light of the ALJ's errors. On remand, the ALJ should demonstrate his

---

opposed to the "Part III - Functional Capacity Assessment," Dr. Brace's finding was supportive of Dr. Newman's opinion in this regard, and the ALJ erred when he failed to address these opinions and resolve the conflict they created with his own finding.

    The Court further notes that in footnote 7 of his brief Defendant attempts to argue that the ALJ was reasonable in not relying on Dr. Brace's assessment because Dr. Brace did not have the benefit of reviewing "subsequent medical records showing improvement in her depression." Defendant's Brief in Support (Doc. No. 14 at 12). While this may very well have been a proper reason to discount Dr. Brace's opinion, it was not a reason that was provided by the ALJ and if that was the ALJ's basis for not incorporating the limitations identified by Dr. Brace into his RFC finding, it was the ALJ's duty to explain that in his decision.

7

consideration of all the relevant mental health evidence, provide an adequate explanation in support of his finding, resolve the conflicts that were created between his finding and the evidence.

Defendant's attempt to fill in the missing pieces of the ALJ's explanation by citing to the records which showed that Plaintiff's depression was not a serious impairment is unavailing, as it is well-established that the Court may not stray from the four corners of the ALJ's decision and may not provide the missing explanation in his rationale. See Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004) (holding that it is error to "rely[ ] upon certain analytical revisions offered on judicial review [because] [a]ffirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process").

## B. ALJ's RFC Determination

The Court also finds that remand is warranted because the ALJ erred in making his RFC determination. First, even if substantial evidence did support the ALJ's conclusion that Plaintiff's depression was a non-severe impairment, remand would still be required because there is no indication that the ALJ considered the limitations resulting from Plaintiff's depression in making his RFC determination.[4] Indeed, the ALJ's RFC determination must account for limitations imposed by both severe and non-severe impairments. As one social security ruling explains:

> In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, *even those that are not 'severe.'* While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with

---

[4] The Court notes that if the ALJ was of the opinion that there were no resulting limitations from Plaintiff's depression, even as a non-severe impairment, then he should have explained that in the course of determining Plaintiff's RFC.

> limitations or restrictions due to other impairments—be critical to the outcome of a claim.

S.S.R. 96–8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996) (emphasis added); see also 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").

Here, the ALJ's RFC finding does not even allude to the existence of mental health evidence in the record and aside from the two sentences which comprise his Step Two finding, the ALJ focused his entire discussion solely on evidence which related to Plaintiff's *physical* impairments. (R. 22-25). This was not harmless error considering the type of evidence that the ALJ failed to acknowledge. Thus, merely because the ALJ did not find Plaintiff's depression to be a severe impairment does not mean that this condition could not still have affected Plaintiff's RFC when considered in combination with her other impairments. The ALJ's failure to address the mental health evidence, particularly the low GAF score and the state agency opinions from Dr. Newman and Dr. Brace, prevents this Court from determining whether the ALJ considered that evidence in making his RFC determination.

Furthermore, because Dr. Newman and Dr. Brace were state agency psychologists, the ALJ committed additional error by failing to assign specific weight to their opinions as he was obligated to do pursuant to S.S.R 96-6p and 20 C.F.R. § 416.927(e)(2)(i) & (ii). The regulations are clear that "administrative law judges *must consider findings and other opinions of State agency medical and psychological consultants*" and [u]nless a treating source's opinion is given controlling weight," the ALJ "*must explain in the decision the weight given to the opinions of a*

*State agency medical or psychological consultant* ... or other medical specialist."[5] 20 C.F.R. § 416.927(e)(2)(i) & (ii) (emphasis added); see also SSR 96–6p, 1996 WL 374180, *2 (July 2, 1996) (observing that ALJs "are not bound by findings made by State agency or other program physicians and psychologists, *but they may not ignore these opinions and must explain the weight given to the opinions in their decisions*") (emphasis added). Thus, the ALJ's failure to assign specific weight to the state agency opinions of Dr. Newman and Dr. Brace is another basis for remand and without any explanation from the ALJ as to why he did not incorporate into his RFC restrictions which accounted for moderate limitations in Plaintiff's social functioning, the Court cannot conclude that substantial evidence supports his RFC assessment.

Second, the Court finds that the ALJ's RFC determination is also flawed because he failed to properly evaluate the medical opinion evidence regarding Plaintiff's physical impairments. In finding that Plaintiff retained the ability to perform light work with her only restriction being the need for a sit/stand option, the ALJ again failed to address and explain away probative evidence which directly conflicted with his finding.

The record contains an opinion from Dr. Hahn, a state agency consultative examiner, who evaluated Plaintiff on January 28, 2010. From a physical standpoint, Dr. Hahn found that Plaintiff: (i) was limited in her ability to push and pull with both her upper and lower extremities; (ii) was unable to engage in *any* postural activities; (iii) was limited in reaching, handling, and fingering; and (iv) was substantially restricted in her ability to work in certain environments. (R. 400-401). In his decision, however, the ALJ omitted several of Dr. Hahn's findings from his discussion, stating that:

---

[5] The Court notes that this is not a situation where the ALJ gave controlling weight to a treating physician opinion.

> Dr. Hahn opined that due to her impairments, the claimant had no limitation in her ability to lift and carry and would be limited to 1-2 hours standing and walking and no limitation in her ability to sit in an eight-hour workday (Exhibit E18F).

(R. 22). The ALJ's discussion of Dr. Hahn's opinion was inadequate as he made no mention of the additional exertional, postural, manipulative, and environmental restrictions that Dr. Hahn had identified, and never indicated the weight he assigned to his opinion. The ALJ's lack of explanation for his implicit rejection of the additional limitations identified by Dr. Hahn prevents this Court from determining whether substantial evidence supported the ALJ's decision to omit the additional restrictions from the RFC assessment.

In making this finding, the Court recognizes that the ALJ has the sole responsibility for assessing Plaintiff's RFC. See Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003) ("[T]he ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). However, one of the ALJ's primary functions is to resolve conflicting evidence in the record, see Plummer, 186 F.3d at 429, and the ALJ here did not even acknowledge the existence of a conflict and the fact that there was evidence of additional limitations that were unaccounted for in his RFC determination.

While the ALJ was not bound by Dr. Hahn's findings, he had a duty to address the portions of his opinion that contradicted his own finding so that he could explain the basis for his disagreement. See Cotter, 642 F.2d at 706 ("[T]here is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record."); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning'

for his conclusion sufficient to enable meaningful judicial review."). However, instead of acknowledging that portions of Dr. Hahn's opinion contradicted his RFC determination and explaining why his findings in certain areas were entitled to less weight, the ALJ appears to have cherry picked the parts of Dr. Hahn's opinion that supported his assessment, without any attempt to resolve the conflict that was created between his RFC assessment and Dr. Hahn's findings.

Defendant argues that the ALJ was reasonable in not relying on Dr. Hahn's opinion because it was internally inconsistent. (Doc. No. 14 at 13-14). Again, Defendant attempts to provide post-hoc justifications for the ALJ's treatment of Dr. Hahn's opinion by citing to evidence which undermines Dr. Hahn's findings, even though the Court cannot consider explanations that were not provided by the ALJ himself. If the ALJ felt that the evidence did not support the additional limitations, it was his responsibility to expressly articulate his reasoning. See Fargnoli, 247 F.3d at 44 n.7; see also Roundtree v. Astrue, 2008 WL 161149, at *6 (E.D. Pa. Jan. 16, 2008) ("it is impermissible for the court to supply its own reasons to support an ALJ's decision; the court must limit its analysis to the explanations an ALJ actually provides for her decision").

Furthermore, and contrary to Defendant's contention, the ALJ's silence as to the additional restrictions identified by Dr. Hahn is not a harmless error. The ALJ's failure to provide an explanation for why he did not incorporate these limitations into his RFC prevents this Court from determining whether his implicit rejection of those restrictions was for a legitimate reason that was supported by substantial record evidence. Moreover, the inclusion of the additional limitations in the RFC assessment could have substantially eroded the occupational base for light work. To that end, the applicable regulations offer the following explanation for the demands of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objections weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time **with some pushing and pulling of arms or leg controls**. To be considered capable of performing a full or wide range of light work, **you must have the ability to do substantially all of these activities**.

20 C.F.R. § 416.967(b) (emphasis added); see also Jesurum v. Comm'r of Soc. Sec., 48 F.3d 114,120 (3d Cir. 1995) ("Pushing and pulling objects or levers, either in a seated or standing position, is a prerequisite to much light work."). Pursuant to Social Security Ruling 85–15, reaching is an activity "required in almost all jobs. Significant limitations of reaching ... may eliminate a large number of occupations a person could otherwise do." 1985 WL 56857, at *7.

Given that Dr. Hahn identified limitations in Plaintiff's ability to push and pull with both her upper and lower extremities and in her ability to reach, handle, and finger, and, given the ALJ's silence as to why he did not adopt these restrictions, the Court cannot conclude that substantial evidence supports the ALJ's finding that Plaintiff could perform "substantially all" of the activities required for light work.

In addition to not properly evaluating Dr. Hahn's opinion, the ALJ improperly assigns great weight to a "state agency medical consultant determination" contained in Exhibit E22F. (R. 24). The ALJ asserts that:

> [I]t fully appears the State Agency Medical consultant determinations that clinical findings fail to support significant functional limitations preclusive of all substantial gainful activity are substantiated by the record as a whole. **(Exhibit E22F)**. In conclusion, **I have assigned great weight to the opinion of the State Agency Medical Consultant**; however, I have resolved all doubt in the claimant's favor, crediting as many of claimant's alleged symptoms as can reasonably be supported by this medical record, and given a more restrictive residual functional capacity than that postulated by the State Agency.

(R. 24-25) (emphasis added). The "state agency medical consultant determination" in Exhibit E22F, however, is a Psychiatric Review Technique prepared by state agency psychologist Dr.

13

Brentzel, and it clearly indicates that there was *insufficient evidence for him to conduct an evaluation* because Plaintiff "failed to report to 2 scheduled MSE appointments." (R. 426). Dr. Brentzel *did not* find that there was "insufficient evidence" of functional limitations based on his evaluation of the medical evidence. Rather, he simply noted that he was unable to prepare the assessment because Plaintiff had failed to attend two consultative examinations. The ALJ somehow interprets Exhibit E22F to be a medical opinion, reached after an actual evaluation of the record, that there was insufficient evidence to establish any functional limitations. Substantial evidence does not support that interpretation.

The Court notes that it considered whether the ALJ intended to cite to Exhibit E12F as opposed to Exhibit E22F, but an intended reference to E12F still would fare no better because it is a physical RFC form prepared by "John A. Thomas LEX s11," a state agency adjudicator and non-medical source. Thus, even if the ALJ's intent was to rely on the state agency findings in Exhibit E12F, he still would have erred because a disability adjudicator with an "LEX" designation is not an "acceptable medical source" within the meaning of the regulations and their opinion is not entitled to *any* weight. See Demace v. Astrue, 2013 WL 1775055, at *13 (M.D. Pa Apr. 25, 2013) ("With respect to the reliance on a form completed by the state agency disability examiner, administrative law judges have been instructed to accord such documents no evidentiary weight") (citing Doc. 12, pages 14–15 in Edwards v. Astrue, Civil No. 10–126 (M.D. Pa.) (quoting a memorandum from the Chief Administrative Law Judge stating the policy of Social Security Administration prohibits Administrative Law Judges from according any weight to forms completed by the non-medical state agency disability examiners)).

## V. **Conclusion**

For the foregoing reasons, the Court finds that the ALJ's determination of non-disability, as written, is not supported by substantial evidence. The ALJ's errors were not harmless because they could have affected the outcome of the case, and the flaws identified in the ALJ's RFC determination substantially undermine the hypothetical presented to the VE. Thus, the Court cannot conclude that the VE's testimony constitutes substantial evidence that there was other work that Plaintiff was able to perform. Accordingly, the Court hereby remands this case to the Commissioner for reconsideration consistent with this Opinion.

s/Alan N. Bloch
United States District Judge

Dated: March 26, 2014

ecf: Counsel of record